UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

YVONNE BROWN,

                     *Plaintiff*,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

                     *Defendant*.

---------------------------------------X

**MEMORANDUM AND ORDER**

20-CV-5959(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Yvonne Brown
("Plaintiff") appeals the final decision of the Commissioner of
the Social Security Administration ("Defendant" or the
"Commissioner") finding that Plaintiff is not disabled within
the meaning of the Social Security Act (the "Act") and thus not
entitled to disability insurance benefits ("benefits") under
Title II of the Act.  Presently before the Court is Plaintiff's
motion for judgment on the pleadings (ECF No. 12, "Ptf. Mem."),
the Commissioner's response to Plaintiff's motion for judgment
on the pleadings and cross-motion for judgment on the pleadings
(ECF No. 13, "Def. Mem.") and Plaintiff's reply memorandum of
law in support thereof.  (ECF No. 14, "Ptf. Reply".)

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is **GRANTED**, the Commissioner's cross-motion is respectfully **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

## Background

The parties have filed a joint stipulation of relevant facts detailing Plaintiff's medical history, the ALJ's review, and the administrative hearing testimony, which the Court has reviewed and hereby incorporates by reference.  (*See generally* ECF No. 15, Joint Stipulation of Facts ("Stip.").)  Here, the Court briefly recounts the facts relevant to the instant motions.

Plaintiff was born in 1958 (Stip. at 2) and worked for 38 years prior to the onset of the alleged disability, including as an "application reviewer."  (ECF No. 16, Administrative Transcript, "Tr." at 215-16.)  Plaintiff filed an application for disability insurance benefits on October 20, 2017 wherein she alleged that the onset date of her disability was January 16, 2017.  (Stip. at 2.)  Plaintiff's claim was denied.  (*Id.*)

On April 13, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  ALJ Paul W. Goodale held a hearing on September 16, 2019.  (*Id.*)  Although Plaintiff's original benefits application and supporting medical documentation focused on respiratory and spinal impairments,

2

Plaintiff alleged at this hearing that she was disabled by hand and wrist impairments, including bilateral carpal tunnel syndrome.  (Tr. at 14.)  On January 2, 2020, the ALJ issued a decision denying Plaintiff's application for disability insurance benefits.  (Stip. at 2.)  Using a five-step sequential analysis, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  (Tr. at 10.)

At the first step of the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2017, the alleged disability onset date, and that Plaintiff met the insured status requirements of the Act through December 31, 2021.  (Tr. at 12.)

At step two, the ALJ found that Plaintiff suffered from a number of severe impairments, including bilateral carpal tunnel syndrome, hand-wrist neuropathy in the bilateral upper extremities, and status post wrist compression procedures related to both of Plaintiff's wrists (the "hand and wrist impairments").  (Tr. at 12.)  The ALJ also found that Plaintiff had non-severe impairments that were either under control or that had improved with the assistance of medication including hypertension, status post right knee arthroscopy, asthma, and spinal disorder.  (Tr. at 13.)

At the third step, the ALJ determined that Plaintiff's impairments, both individually and in combination, did not

3

"reach the level of severity contemplated in the Listings."
(Tr. at 13.)  Specifically, the ALJ found that Plaintiff's
impairments did not meet the requirement of Listing 1.04 as it
relates to Plaintiff's spinal impairments.  (Tr. at 13.)  The
ALJ did not identify any listings that were applicable to those
of Plaintiff's impairments that the ALJ described as medically
severe at step two, including Plaintiff's bilateral carpal
tunnel syndrome, hand-wrist neuropathy in the bilateral upper
extremities, and status post wrist compression procedures
related to both of Plaintiff's wrists.  Nevertheless, much of
the ALJ's discussion of Plaintiff's impairments in the context
of his residual functional capacity ("RFC") determination
focused on Plaintiff's hand and wrist impairments.  (Tr. at 14-
17.)

Ultimately, the ALJ concluded that Plaintiff had the RFC to
perform light work as defined in 20 C.F.R. § 404.1567(b) with
certain limitations.[1]  (Tr. at 14.)  The ALJ stated that his RFC
"assessment [was] supported by the medical record" and concluded
that "[v]iewing the record as a whole, there is a substantial

---

[1] The ALJ found that while Plaintiff was capable of engaging in work that
involved "handling and fingering bilaterally, and frequent overhead reaching
bilaterally[,]" Plaintiff "must avoid concentrated exposure to fumes, odors,
dust, gases, poorly ventilated areas and pulmonary irritants" and that
Plaintiff "could not do assembly-line type work (i.e., outwardly paced,
working in close tandem with co-workers)," with the exception of "individual
table/bench work[,]" which Plaintiff could still perform.  (Tr. at 14.)

4

disparity between the claimant's documentary complaints and the objective medical findings contained in the record" and that Plaintiff's testimony regarding her condition was "neither reasonably consistent with [the] medical findings [in the record], nor sufficiently credible as additive evidence[.]" (Tr. at 17.)  In describing the medical findings in the record, the ALJ referred primarily to treatment notes from Plaintiff's treating physician, Dr. Michael Rettig, M.D. as well as Plaintiff's own self-reported symptoms.  The ALJ explicitly disavowed "any prior administrative medical findings or medial opinions," stating that the record contained "no assessments or Medical Source Statements by any treating provider."  (Tr. at 17.)

Although the ALJ stated Plaintiff's testimony regarding "the intensity, persistence and limiting effects of [her] symptoms" and Plaintiff's daily activities were inconsistent with the "medical opinions" in the record, the ALJ did not appear to consider any medical opinions.  (Tr. at 16.)  In fact, the ALJ stated that there were no medical opinions in the record relating to the set of impairments that the ALJ determined were severe.  (Tr. at 17) ("There were no assessments or Medical Source Statements by any treating provider[]" regarding Plaintiff's hand and wrist impairments or otherwise.)  With respect to the medical opinion of Dr. D. Chen, the ALJ declined

to consider Dr. Chen's opinion because Dr. Chen's opinion did
not include an assessment of Plaintiff's residual functional
capacity, because Dr. Chen's medical opinion purported to
evaluate Plaintiff's spinal impairments, as opposed to
Plaintiff's hand and wrist impairments, and because Plaintiff
failed to attend a February 28, 2018 consultative examination
with Dr. Chen.  (Tr. at 13, 17.)  The ALJ further concluded that
"[a]s for medical opinions and prior administrative medical
findings, [he would] not defer or give any specific evidentiary
weight, including controlling weight, to any prior
administrative medical findings or medial opinions."  (Tr. at
17.)

     Having ruled out "any prior administrative medical findings
or medical opinions" (Tr. at 17), the ALJ summarized Plaintiff's
medical history with respect to her bilateral carpal tunnel
syndrome and other hand and wrist related restrictions.
Specifically, the ALJ referenced Plaintiff's "January 13, 2017 .
. . evaluation of bilateral hand pain/numbness[,]" Plaintiff's
"January 17, 2017 . . . right carpal tunnel release surgery
[and] . . . right wrist median nerve compression" following her
diagnosis with right carpal tunnel syndrome, Plaintiff's "April
25, 2017 . . . left wrist median nerve decompression surgery"
and treatment notes from Dr. Rettig stating that Plaintiff's
"left wrist incision was healed," that, following Plaintiff's

6

"November 6, 2018 . . . left thumb decompression of flexor
tendon," Plaintiff's "left thumb incision [had] healed," and
that Plaintiff's "left thumb locking [had] resolved" as of June
3, 2019.  (Tr. at 16-17.)  The ALJ also referred to "X-rays
reveal[ing] . . . joint osteoarthritis[.]"  (Tr. at 17.)  Based
on these observations, the ALJ concluded that although
Plaintiff's "medically determinable impairments could reasonably
be expected to" cause the symptoms alleged by Plaintiff,
Plaintiff's "statements concerning the intensity, persistence,
and limiting effects of [her] symptoms [were] not entirely
consistent with the medical evidence and other evidence in the
record[.]"  (Tr. at 16.)

At the fourth step, the ALJ determined that based on her
RFC, Plaintiff "is capable of performing her past relevant work
as a final application reviewer."  (Tr. at 17.)

Finally, at step five, the ALJ noted that, according to the
vocational expert's testimony, Plaintiff could also perform
"other jobs that exist in significant numbers in the national
economy," given Plaintiff's "[RFC], age, education, and work
experience[.]"  (Tr. at 18.)  Specifically, the ALJ referenced
testimony from vocational expert, Zachary Fosberg, stating that
Plaintiff can work as an "office clerk[.]"  (Tr. at 18.)

Accordingly, the ALJ found that Plaintiff was "not disabled
under sections 216(i) and 223(d) of the [Act]" and was not

therefore entitled to disability insurance benefits.  (Tr. at 19.)

Plaintiff requested review of the ALJ's decision on January 7, 2020 and, on October 9, 2020, the Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner.  (Stip. at 2.)  On December 7, 2020, Plaintiff filed the instant action seeking judicial review of the Commissioner's final decision.  (*See generally* ECF No. 1, Complaint ("Compl.").)

## Legal Standard

### I.    The Commissioner's Disability Determination

To receive disability benefits, a claimant must be disabled within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant is considered disabled within the meaning of the Act if she demonstrates her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  "The impairment must be of such severity that [the claimant] is not only unable to do [her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  *Shaw v. Chater*, 221

F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. §
423(d)(2)(A)) (internal quotation marks omitted).

In evaluating whether a claimant's condition constitutes a
disability within the meaning of the Act and whether the
claimant is, therefore, entitled to benefits, the Commissioner
conducts a five-step sequential evaluation process. *See* 20
C.F.R. § 404.1520.  Throughout that analysis, the Commissioner
must consider "(1) the objective medical facts [and clinical
findings]; (2) diagnoses or medical opinions based on such
facts; (3) subjective evidence of pain or disability . . .; and
(4) the claimant's educational background, age, and work
experience." *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262
(E.D.N.Y. 2010) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d
Cir. 1999) (alterations in original).

At the first step of the Commissioner's five-step
sequential analysis, the Commissioner must determine whether the
claimant is currently engaged in substantial gainful activity.
*See* 20 C.F.R. § 404.1520(a)(4)(i).  If not, the Commissioner
must next determine whether the claimant has a severe
impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii).  The
Commissioner's assessment of severity at the second step is
based on the combined effect of all the claimant's impairments,
including those that are not considered medically severe. *See*
20 C.F.R. §§ 404.1523, 404.1545(a)(2).  At step three, the

Commissioner must determine whether the claimant's impairment or combination of impairments is, or medically equals, one of the listings of impairments included in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  The Commissioner then evaluates the claimant's capacity for physical and mental work activities on a sustained basis considering the claimant's impairments.  This is referred to as the claimant's RFC and is defined as "the most [that a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a).  At the fourth step, the Commissioner considers whether the claimant can engage in past relevant work in light of the claimant's RFC.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  Finally, at step five, the Commissioner must determine whether the claimant can perform other work that is available in the national economy, taking into account the claimant's RFC, age, education, and past work experience.  *See* 20 C.F.R. § 404.1520(a)(4)(v).

At steps one through four of the sequential five-step analysis, the claimant bears the "general burden of proving that [] she has a disability."  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  Once the claimant has met her burden at steps one through four, the Commissioner bears the burden, at step five, of demonstrating that, notwithstanding the claimant's RFC, age, education, and work experience, she is "able to engage in

gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

## II.  Judicial Review of the Commissioner's Final Decision

Following a final decision of the Commissioner, denying a claimant's application for disability benefits, a claimant may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g).  A reviewing court may not conduct a *de novo* review of the claimant's application. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Nor can the district court "substitute its own judgment for that of the [ALJ]," even if it would have justifiably reached a different conclusion. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation omitted).

Pursuant to 42 U.S.C. § 405(g), a reviewing district court may affirm, reverse, or modify the decision of the Commissioner with or without remanding the cause for a rehearing. *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  However, the district court may only set aside the Commissioner's determination that a claimant is not disabled within the meaning of the Act if the district court finds either that the factual findings of the Commissioner are not supported by substantial

11

evidence or that the final decision of the Commissioner is based on legal error. *Burgess*, 537 F.3d at 127 (internal quotation marks and citations omitted); *see also* 42 U.S.C. § 405(g).

"Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971) (internal quotation marks omitted)). The Commissioner's final decision is based on legal error if the ALJ "fail[ed] to apply the correct legal standard . . . [or] fail[ed] to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 262 (2d Cir. 2008).

Finally, federal regulations explicitly authorize a reviewing district court to remand for further proceedings when appropriate. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard[.]" *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's

decision.  *Pratts*, 94 F.3d at 39.  If the record before the
reviewing court provides "persuasive proof of disability and a
remand for further evidentiary proceedings would serve no
purpose," however, the reviewing court may reverse and remand
solely for the calculation and payment of benefits.  *Parker v.
Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

## <u>Discussion</u>

Plaintiff contends that the ALJ's decision was not based on
substantial evidence and that remand is warranted because (1)
the ALJ failed to properly evaluate the medical evidence in the
record, particularly as it relates to statements made by Dr.
Rettig, (2) the ALJ failed to adequately develop the medical
record with respect to the ALJ's determination of Plaintiff's
RFC, and (3) the ALJ failed to properly evaluate Plaintiff's
subjective statements.  In response, defendants argue that (1)
Dr. Rettig's statements were properly considered by the ALJ as
treatment notes, rather than medical opinions, (2) that the
medical record contained sufficient evidence to support the
ALJ's RFC determination and did not require further development,
and (3) that the ALJ exercised the proper discretion to consider
and ultimately discount Plaintiff's credibility.

For the reasons set forth below, the Court finds that Dr.
Rettig's statements do not constitute medical opinions within
the meaning of 20 C.F.R. § 404.1527(a)(1), that the ALJ failed

to adequately develop the record with respect to his RFC determination, and that the ALJ failed to properly evaluate Plaintiff's subjective symptom testimony.  The ALJ also failed to specify and discuss the relevant listings of impairments, as required by 20 C.F.R. § 404.1520(a)(4)(iii).  The ALJ's decision, particularly as it relates to his RFC determination, was not supported by substantial evidence and the ALJ's credibility assessment of Plaintiff's subjective symptom testimony was rooted in legal error.  Accordingly, the Court reverses and remands the final decision of the Commissioner.

### I.   Dr. Rettig's Treatment Notes

Plaintiff first contends that Dr. Rettig's treatment notes are medical opinions which the ALJ failed to properly consider in his determination.  (Ptf. Mem. at 2.)  In response, the Commissioner notes that "Dr. Rettig's statements were not 'medical opinions' . . . under the regulations."  (Def. Mem. at 7.)  Dr. Rettig's treatment notes do not constitute medical opinions as defined by 20 C.F.R. § 404.1527(a)(1) and, even if they did, the Commissioner would not be beholden to conclusory statements regarding Plaintiff's disability status, pursuant to 20 C.F.R. § 404.1527(d)(1).

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms,

14

diagnosis and prognosis, what [she] can still do despite [her] impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).  Medical opinions are more than mere treatment notes.  *See Fontanez v. Colvin*, No. 16-cv-01300 (PKC), 2017 WL 4334127, at *25 (E.D.N.Y. Sep. 28, 2017) (noting that "based on the ALJ's decision, it is unclear how [Plaintiff's physical therapy and treatment notes] alone supported the ALJ's finding that Plaintiff is capable of sitting, standing, and walking . . . [particularly] when Plaintiff also consistently reported to her physicians that her . . . pain was exacerbated by sitting or standing.")  In order to constitute a medical opinion under 20 C.F.R. § 404.1527(a)(1), a medical practitioner's statements must "explicitly assess [the] claimant's limitations and RFC." *Reginald R. v. Comm'r of Soc Sec.*, No. 21-cv-6326 (CJS), 2023 WL 5608869, at *10 (W.D.N.Y. Aug. 30, 2023).

Dr. Rettig's statements do not provide sufficient insight into Plaintiff's abilities or restrictions regarding her functional limitations or capacity to work.  Nor do Dr. Rettig's notes shed light on the nature and severity of Plaintiff's impairments for the purpose of an RFC determination.[2]  On March

---

[2] In reviewing the record, it is apparent that Plaintiff's first appointment with Dr. Rettig resulted in the most descriptive of Dr. Rettig's treatment notes in terms of describing the manner in which Plaintiff's symptoms physically limit her work activities.  On September 19, 2016, Dr. Rettig noted in his treatment notes that Plaintiff "ha[d] been working" and that

9, 2017, Dr. Rettig states that Plaintiff's "pre-operative symptoms are resolving," "follow[ing] [Plaintiff's] . . . right carpal tunnel" procedure, but that Plaintiff is "unable to work" and is "[l]ikely [to] return to work [by] June 26, 2017." (Tr. at 487). On April 27, 2017, approximately two days after Plaintiff's left wrist median nerve compression procedure, Dr. Rettig states that Plaintiff is "not working" and instructs her to "limit use of [her] hand." (Tr. at 491.) On May 4, 2017, Dr. Rettig again states that Plaintiff is "not working," noting that she is "completely disabled from work" notwithstanding Plaintiff's "[f]ull digital active range of motion." (Tr. at 492.) Plaintiff was instructed to "RTO" in "6 weeks" for consideration of whether Plaintiff may "return to work at that time." (*Id.*) There are no further treatment notes in the record for nearly 18 months. On November 12, 2018 and again on February 25, 2019, Dr. Rettig notes that Plaintiff is "not working," although he remarks that Plaintiff is "[d]oing well," has "[g]ood thumb flexion," "[h]as been using [her thumb] with

---

Plaintiff was "complaining of pain over volar aspect of wrist with radiation proximally and distally." (Tr. at 477.) Dr. Rettig further elaborates that Plaintiff experienced "associated numbness/tingling to Right index and long finger, [and] Left index/long/ring fingers" that is "[w]orse with typing" and that Plaintiff's "[p]ain/numbness wakes [her up] at night." (*Id.*) There is no further or even similar description of how Plaintiff's impairments might impact her functioning in any of the subsequent treatment notes. In fact, it is unclear whether the treatment notes regarding Plaintiff's complaints of pain for the follow up visits with Dr. Rettig after each of Plaintiff's surgical procedures apply to both of Plaintiff's hands/wrists or just the hand/wrist that was the subject of the most recent surgical procedure and the focus of the follow up visit.

daily activities," and has "no complaints of pain."  (Tr. at 494.)

The statements in Dr. Rettig's treatment notes do not constitute an explicit assessment of Plaintiff's mental or physical limitations in connection with Plaintiff's capacity to work.  As a result, these statements cannot, alone, support an RFC determination in these circumstances.  *See Buonsignore v. Commissioner of Social Security*, No. 20-cv-4582 (MKB), 2022 WL 4121378, at *5 (E.D.N.Y. Sep. 9, 2022) ("As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . ., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing[]") (internal citations omitted) (alterations in original).

Plaintiff alleges that "Dr. Rettig twice opined that Ms. Brown was not cleared to return to work in any capacity" and that "the ALJ failed to even mention these opinions . . . let alone indicate how persuasive he found [them]."  (Ptf. Mem. at 2.)  It is not clear that Dr. Rettig's statements that Plaintiff was "unable to work" on March 9, 2017 (Tr. at 487), or that Plaintiff was "completely disabled from work" on May 4, 2017 (Tr. at 492), particularly in the context of subsequent notes remarking on Plaintiff's progress, represent a conclusion that

17

Plaintiff is "not cleared to return to work in any capacity," as
Plaintiff suggests.  (Ptf. Mem. at 2.)  In any case, 20 C.F.R. §
404.1527(d)(1) explicitly rejects conclusory statements made by
medical practitioners that a Plaintiff is "disabled" or "unable
to work" because such conclusions lie squarely within the realm
of the Commissioner's judgment.  Accordingly, Dr. Rettig's
treatment notes neither constitute medical opinions within the
meaning of 20 C.F.R. § 404.1527(a)(1), nor do Dr. Rettig's
statements on March 9, 2017 and May 4, 2017 require adoption by
the Commissioner in light of 20 C.F.R. § 404.1527(d)(1).

## II.  The ALJ's Duty to Develop the Record

Next, Plaintiff contends that the ALJ did not properly
develop the medical record because the ALJ failed to request an
updated and more detailed medical opinion from the treating
specialist or from an examining or non-examining consultant.
(Ptf. Mem. at 5.)  Defendant raises two points in response: (1)
that the ALJ was under no obligation to obtain an updated and
more detailed medical opinion from Dr. Rettig because the record
was adequate to make a disability determination and that (2)
Plaintiff rejected contemporaneous opportunities to supplement
the record by declining to attend the consultative examination
scheduled for her by the ALJ.  (Def. Mem. at 9-10.)  Both of the
Commissioner's responses are misguided in light of the notably
limited medical record, which the ALJ acknowledged and failed to

18

supplement, and because Plaintiff's responsibility to proffer supporting medical evidence "do[es] not derogate from the ALJ's responsibility to investigate[]" Plaintiff's claims. *Tankisi v. Commissioner of Social Sec.*, 521 F. App'x 29, 33 n.1 (2d Cir. 2013) (citing *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996)).

### A. The Medical Record was Notably Limited

"Social Security adjudications represent a unique variant from the traditional model of adversarial litigation[]" because "Social Security disability determinations are investigatory, or inquisitorial, rather than adversarial." *Vincent v. Commissioner of Social Sec.*, 651 F.3d 299, 304-05 (2d Cir. 2011) (citing *Morgan v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted)).  In light of the investigatory nature of Social Security proceedings, the ALJ, unlike a judge at trial, has a duty "to investigate and develop the facts and develop the arguments both for and against the granting of" social security benefits. *Butts*, 388 F.3d at 386 (internal citation omitted).  An ALJ is not relieved of this duty by virtue of a claimant's failure to fulfill their own responsibility "to bring all favorable evidence to the ALJ's attention[.]" *Tankisi*, 521 F. App'x at 33 n.1.

In the context of the RFC determination, the ALJ typically has a duty to request medical source opinions where no such opinions or comparable information are otherwise available

19

within the record.  *See Arias v. Saul*, No. l8-cv-1296 (KAM),
2020 WL 1989277, at *7 (E.D.N.Y. Apr. 25, 2020) ("The ALJ should
have obtained a medical opinion from a qualified source, as her
RFC could not stand if unsupported by at least one medical
opinion.").  This is "[b]ecause an RFC determination is a
medical determination, [and] an ALJ who makes an RFC
determination in the absence of supporting expert medical
opinion has improperly substituted his own opinion for that of a
physician[.]"  *Fontanez*, 2017 WL 4334127, at *19 (internal
citations omitted); *see also Blowe v. Commissioner of Social
Security*, No. 19-cv-2658 (JS), 2020 WL 3129062, at *5 (E.D.N.Y.
June 12, 2020) (an "ALJ is not qualified to assess a claimant's
RFC on the basis of bare medical findings, and as a result an
ALJ's determination of [a claimant's] RFC without a medical
advisor's assessment is not supported by substantial evidence")
(internal citation and quotation marks omitted).  Nevertheless,
"remand is not always required when an ALJ fails to request
[medical] opinions" *Tankisi*, 521 F. App'x at 34, and in
particular, "where there are no obvious gaps in the
administrative record, and where the ALJ already possesses a
complete medical history, the ALJ is under no obligation to seek
additional information."  *Lowry v. Astrue*, 474 F. App'x 801, 804
(2d Cir. 2012) (internal quotation marks and citation omitted).

Here, it cannot be concluded that the ALJ "already possess[ed] a complete medical history" nor can it be decided that there are "no obvious gaps in the administrative record." *Lowry*, 474 F. App'x at 804.  First, there is no indication from the record that the ALJ requested medical opinion evidence from Dr. Rettig.  As previously noted, Dr. Rettig's treatment notes are not medical opinions, nor does the content of Dr. Rettig's treatment notes constitute a substantive equivalent or replacement of a medical opinion because Dr. Rettig did not include any explicit functional assessment of Plaintiff's limitations.  *See Fontanez*, 2017 WL 4334127, at *26 (where there is a "lack of explicit functional assessments by Plaintiff's treating physicians, the ALJ should have requested an RFC assessment from one of Plaintiff's many treating physicians who examined her on an ongoing basis.").  Nor were there other medical opinions or assessments within the record that obviated the need for the ALJ to solicit additional medical opinions.  Indeed, the ALJ explicitly acknowledged the limited nature of the medical record, stating that there were "no assessments or Medical Source Statements by any treating provider" within the record and that he we would "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions."  (Tr. at 17.)  In the absence of "any . . . medical

21

findings or medical opinions," the ALJ should have obtained a
medical opinion from a qualified source.  (*Id.*)

Furthermore, there is no indication from the record that
the ALJ made a reasonable attempt to request or obtain medical
records from any other medical source, including Plaintiff's
occupational therapy treatment records.  The first treatment
notes with Dr. Rettig from September 19, 2016, indicate that
Plaintiff "ha[d] been in occupational therapy for two years."
(Tr. at 477.)  After Plaintiff's right carpal tunnel surgery,
Dr. Rettig said that Plaintiff was going to occupational therapy
and should continue to do so.  (Tr. at 487.)  On May 4, 2017,
during a follow up appointment after Plaintiff's carpal tunnel
surgery on her left wrist, Dr. Rettig again stated in his
treatment notes that Plaintiff had "start[ed] occupational
therapy."  (Tr. at 492.)  The ALJ made no reference to
Plaintiff's history of occupational therapy treatment and does
not appear to have either solicited Plaintiff's treatment
records or sought to explain why such records were unnecessary.
Particularly given the gap in Plaintiff's treatment records with
respect to Dr. Rettig, the ALJ should have sought to obtain
Plaintiff's occupational therapy treatment records to further
develop the record and support his RFC determination.  *See
Daniela B. v. Kijakazi*, No. 22-cv-03495 (NRM), 2023 WL 3719634,
at *7 (E.D.N.Y. May 30, 2023) (finding that the ALJ failed to

develop the record because "[the ALJ] [did] not include any treatment notes from the mental health counselor who treated Plaintiff regularly for three years," which was "a clear and obvious gap in the record.").

Second, as the Commissioner acknowledges, the record reflects a significant gap in Plaintiff's treatment by the sole treating physician referenced in the record, Dr. Rettig. (Def. Mem. at 13.) Following Plaintiff's carpal tunnel surgery in early 2017, Plaintiff does not appear to have met with Dr. Rettig "for approximately 18 months between May 2017 and November 2018." (*Id.*) In light of the absence of any other treatment records from this time period, including occupational therapy treatment records that may have helped fill the gap in the ALJ's understanding of Plaintiff's functional limitations, this approximately 18-month gap placed an affirmative duty on the ALJ to either solicit further medical evidence or to articulate in his decision why any such effort would be in vain. *See Blash v. Comm'r of Soc. Sec. Admin.,* 813 F. App'x 642, 645 (2d Cir. 2020) ("When there is an obvious or 'clear gap[]' in the record, the ALJ is required to seek out missing medical records, even when a party is represented by counsel[]") (citing *Rosa*, 168 F.3d at 79); *see also Powell v. Comm'r of Soc. Sec.*, No. 17-cv-05360 (AMD), 2019 WL 254036, at *3 (E.D.N.Y. Jan. 17, 2019).

23

The Commissioner asks this Court to find that the ALJ was not required to solicit or rely on medical opinion evidence to support the ALJ's RFC determination. The Court denies the Commissioner's request because the record was notably sparse and contains clear and obvious gaps that warranted further development by the ALJ. Under these circumstances, the ALJ had an obligation to solicit additional medical evidence and failed to do so.

### B. Plaintiff's Failure to Attend the February 2018 Consultative Examination Does Not Excuse the ALJ's Failure to Develop the Record

With respect to Plaintiff's failure to attend the February 28, 2018 consultative examination by Dr. D. Chen, the Commissioner's assertion that this failure constitutes a waiver of Plaintiff's disability insurance claim is not supported by applicable regulations or relevant case law. To the extent the ALJ finds that a record is insufficient to make a disability determination and that the claimant is noncompliant such that the record cannot be further developed, the ALJ may find a claimant is not disabled based on her failure to cooperate. *See* 20 C.F.R. § 404.1518. However, in such a circumstance, "the ALJ must include in his decision[] 'a statement about the effect (if any) of the claimant's failure or refusal [to attend the consultative examination] on the [ALJ's] decision.'" *McClean v.*

*Astrue*, 650 F. Supp. 2d 223, 228 (E.D.N.Y. 2009) (internal citations omitted).

The ALJ did not make a finding that Plaintiff was not disabled within the meaning of the Act because of her failure to cooperate and attend a medical examination pursuant to 20 C.F.R. § 404.1518.  Nor did the ALJ specify what effect, if any, Plaintiff's failure to attend the February 28, 2018 consultative examination had on his ultimate decision.  The ALJ notes that Plaintiff "indicated she was unwilling to attend a consultative examination and would not be pursuing her claim" in the context of Dr. D. Chen's "initial[] [assessment of] spinal impairments." (Tr. at 13.)  The ALJ further notes that "in view of these circumstances, [he] does not evaluate the opinion of Dr. Chen." (Tr. at 17.)  However, the consultative examination and Dr. D. Chen's medical opinion relate only to Plaintiff's spinal impairments.  There is nothing in the record to suggest that Plaintiff was uncooperative with efforts by the ALJ to seek a consultative examination or further medical evidence regarding Plaintiff's hand and wrist impairments, which are the only impairments the ALJ found to be medically severe.

Moreover, the ALJ's decision strongly suggests that Plaintiff's failure to attend the February 28, 2018 consultative examination had no bearing whatsoever on his conclusion regarding Plaintiff's hand and wrist impairments.  First, the

consultative examination was scheduled more than a year before Plaintiff's hearing with the ALJ wherein she alleged hand and wrist impairments as the basis for her disability claim, rather than the spinal impairments that Dr. D. Chen was supposed to assess.  Second, Dr. D. Chen explicitly stated that the purpose of his examination was to assess Plaintiff's assertion of "pain of B/L shoulders, arms, right knee, left foot and HTN."  (Tr. at 473.)

More than a year after the February 28, 2018 consultative examination was cancelled, Plaintiff appeared before the ALJ for a hearing on September 16, 2019.  (Tr. at 15-16.)  At the hearing, Plaintiff alleged a new basis for her disability claim, her bilateral carpal tunnel syndrome.  (Tr. at 13.)  Plaintiff's failure to attend the initial consultative examination regarding her apparently abandoned claim of spinal impairments, does not absolve the ALJ of his duty to develop the record with respect to Plaintiff's assertion of hand and wrist impairments and it does not empower the ALJ to undergo a five-step sequential analysis of Plaintiff's hand and wrist impairments without the assistance of any medical assessment or sufficient medical evidence.  Ordering a new consultative examination to assess Plaintiff's bilateral carpal tunnel syndrome was one of many avenues that the ALJ could have taken to develop the record after the hearing.  *See Conyers v. Comm'r of Soc. Sec.*, No. 17-

cv-5126 (BCM), 2019 WL 1122952, at *5 (S.D.N.Y. Mar. 12, 2019)
(noting that the ALJ adjourned plaintiff's hearing in order to
obtain additional medical records and for plaintiff undergo a
consultative examination).  In light of the limited nature of
the medical record regarding Plaintiff's hand and wrist
impairments, Plaintiff's failure to attend a consultative
examination about a separate, apparently abandoned claim is
simply not an excuse for the ALJ to assess Plaintiff's hand and
wrist impairments and make a conclusive RFC determination
without sufficient medical evidence.

**III. The ALJ's Analysis of Plaintiff's Credibility**

The ALJ found that Plaintiff's "medically determinable
impairments could reasonably be expected to produce the above
alleged symptoms," but that Plaintiff's "statements concerning
the intensity, persistence and limiting effects of these
symptoms are not entirely consistent with the medical evidence
and other evidence in the record."  (Tr. at 16.)  The ALJ
further noted that "[v]iewing the record as a whole, there is a
substantial disparity between the claimant's documentary
complaints and the objective medical findings contained in the
record" and that "[t]he evidence generally does not support the
alleged loss of functioning[.]"  (Tr. at 17.)  Plaintiff
contends the ALJ's statements regarding the credibility of her
subjective symptom testimony were "conclusory," were not

27

supported by the required explanation of the ALJ's reasoning, and were "not supported by substantial evidence" in light of the ALJ's concession that the medical record was sparse.  (Ptf. Mem. at 9.)  The Commissioner contends that the ALJ's assessment of Plaintiff's credibility was well-reasoned and supported by evidence in the record.  (Def. Mem. at 12-14.)  The Commissioner further notes that contrary to Plaintiff's assertion, the ALJ had no obligation to reference Plaintiff's 38-year work history in light of the "substantial evidence supporting the ALJ's [credibility] determination.  (Def. Mem. at 15) (citing *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011).

In evaluating a claimant's subjective statements, the ALJ follows a two-step process: (1) determining whether there is an underlying medically determinable physical or mental impairment "that could reasonably be expected to produce the claimant's pain or other symptoms," and (2) once such an impairment has been shown, "evaluat[ing] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations."  *See* 20 C.F.R. § 404.1529.  The "subjective element of pain," as set forth in a claimant's statements or testimony, is "an important factor" in determining the intensity, persistence and limiting effects of the claimant's symptoms and the ALJ has discretion on how to "evaluate the

credibility" of such statements "in light of medical findings and other evidence." *Valet v. Astrue*, No. 10-cv-3282 (KAM), 2012 WL 194970, at *21 (E.D.N.Y. Jan. 23, 2012) (internal quotation marks and citation omitted). Social Security Ruling ("S.S.R.") 96-7p guides the ALJ's determination of the credibility of a claimant's statements. The seven factors that an ALJ must consider in making this determination are:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

S.S.R. 96-7p; *see also* 20 C.F.R. § 404.1529(c).

"[T]he ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 277-78 (2d. Cir. 2009) (quoting *Lugo v. Apfel*, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998).

First, the ALJ found that Plaintiff suffers from an underlying medically determinable physical impairment that could reasonably be expected to produce her pain or other symptoms,

but the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her hand and wrist impairments "are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 16.)  The ALJ then proceeded to review Plaintiff's subjective symptom testimony (Tr. at 14-15) and summarize Dr. Rettig's treatment notes.  (Tr. at 16-17).

Putting aside the insufficiency of the medical evidence to which the ALJ compares Plaintiff's subjective testimony, the ALJ's determination fails to articulate his reasons with specificity and fails to identify what evidence he gives weight to in his assessment.  *See Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) ("a finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record[]") (quoting *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 643 (2d Cir. 1983).  Specifically, the ALJ fails to explain how Plaintiff's testimony can properly be compared to the record when he simultaneously asserts that the record contains "no assessments or medical source statements." (Tr. at 17.)  This contradiction is highlighted by the ALJ's conclusion that Plaintiff's "allegations are not consistent with, or fully supported by, the documentary medical evidence, treating source

notes and medical opinions (DDS)," and the ALJ's later statement that he did not assess the opinion of the DDS whose opinion Plaintiff's statements are purportedly inconsistent with.  (Tr. at 16-17.)

With respect to Dr. Rettig's treatment notes, although the ALJ summarizes Plaintiff's surgeries and diagnoses, and Dr. Rettig's treatment notes generally (Tr. at 16-17), the ALJ fails to provide specific reasons for how Dr. Rettig's treatment notes were considered in his assessment of Plaintiff's credibility or conflicted with Plaintiff's testimony regarding her exertional limits or capacity to work.  As noted earlier, Dr. Rettig's treatment notes do not purport to address Plaintiff's exertional limits and capacity to work.

Ultimately, the ALJ did not specify the reason for which he accorded seemingly no weight to Plaintiff's subjective symptom testimony.  *See Alcantara*, 667 F. Supp. 2d at 278 (remanding "for the ALJ to provide more detailed reasons for her credibility determination, taking into consideration the factors set forth in 20 C.F.R. 404.1529(c)(3)" because the ALJ "summarized her credibility finding in a single statement, indicating that [Plaintiff's] allegations . . . are not totally credible for the reasons set forth in the body of the decision" without detailing "the basis for her credibility assessment")

31

(internal quotation marks and citations omitted).  As in *Alcantara*, ALJ Goodale concluded that Plaintiff's subjective testimony was not consistent with the "record as a whole" and the "evidence generally" for "the reasons explained in [his] decision" without the required elaboration.  (Tr. at 16-17.)

Finally, the Commissioner is correct that the absence of any reference to Plaintiff's work history in the ALJ's decision does not necessarily undermine the ALJ's credibility assessment and is not *per se* dispositive such that remand on this basis alone would be warranted.  (Def. Mem. at 15.)  However, in light of the sparseness of the overall record, Plaintiff's 38 years of dedicated work experience should have been particularly probative of her credibility.  *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) ("ALJs are specifically instructed that credibility determinations should take account of 'prior work record'" because a Plaintiff's "good work history may be deemed probative of credibility") (internal citation omitted).  On remand, the Court encourages the ALJ to consider Plaintiff's work history in assessing her credibility, consistent with the governing regulations.  *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (finding that "any evidence of a desire by [Plaintiff] to work would merely emphasize the positive value of his 32-year employment history.  A claimant with a good work

record is entitled to substantial credibility when claiming an inability to work because of a disability.")

Ultimately, remand is warranted where, as here, the ALJ fails to detail a basis for his conclusion regarding Plaintiff's credibility. *See Valet,* 2012 WL 194970, at *22 ("Where the ALJ fails [to] sufficiently [] explain a finding that the claimant's testimony was not entirely credible, remand is appropriate[]") (quoting *Tornatore v. Barnhart*, No. 05-cv-6858 (GEL), 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006)).

## IV. The ALJ's Discussion of Relevant Listings of Impairments

Although Plaintiff does not challenge the ALJ's determination of the relevant listings of impairments, this Court finds that the ALJ failed to either specify the relevant listing that applies to Plaintiff's hand and wrist impairments or articulate a finding that no relevant listing applied to Plaintiff's impairments.  At step three of the five-step sequential analysis, the ALJ considers whether the claimant "[has] an impairment(s) that meets or equals one of the listings in appendix 1 of this subpart[.]"  20 C.F.R. § 404.1520(a)(4)(iii).  The ALJ found that Plaintiff's hand and wrist impairments were medically severe, but his analysis stopped short of identifying any listing of impairments.  (Stip. at 6) ("ALJ Goodale found that [Plaintiff had] severe impairments of bilateral carpal tunnel syndrome, hand-wrist

33

neuropathy in the bilateral upper extremities, and status-post wrist compression procedures.")  By contrast, the ALJ properly specified a listing applicable to Plaintiff's spinal impairment, giving "specific consideration . . . to Section 1.04 of the Listing of Impairments," and explained that Plaintiff's spinal impairment did not meet the requirements of Listing 1.04 "because the record does not demonstrate compromise of a nerve root . . . or the spinal cord with additional findings[.]"  (Tr. at 13.)  No such analysis was articulated with respect to Plaintiff's hand and wrist impairments.  The ALJ does not specify any other listing that he gave any consideration to or any listing that would apply to Plaintiff's bilateral carpal tunnel syndrome, hand-wrist neuropathy in bilateral upper extremities, or status post wrist compression procedures on both wrists.  Nor does the ALJ conclude that no listing of impairment applies to Plaintiff's hand and wrist impairments.  To the contrary, the ALJ provided a thorough overview of Plaintiff's hearing testimony and a summary of Dr. Rettig's treatment notes in determining Plaintiff's RFC with respect to her hand and wrist impairments, but the ALJ failed to specify any applicable listing that should have preceded his RFC determination.  (Tr. at 15-17.)  Absent any reasoning from the ALJ regarding the relevant listing or lack thereof, the Court is left with no basis on which to review the ALJ's determination.  *See Ferraris*

34

*v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("The crucial factors in [the ALJ's] determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence."); see also *Jones v. Barnhart*, No. 04-cv-2772 (FB), 2004 WL 3158536, at *7 (E.D.N.Y Feb. 3, 2004) ("When the ALJ does not adequately explain his rationale, [the] Court cannot provide meaningful judicial review."). Accordingly, on remand, the ALJ is respectfully directed to assess whether there are any listings of impairments that relate to Plaintiff's hand and wrist impairments and to conduct the relevant inquiry as to any applicable listing at step three of the ALJ's analysis.

### Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED** and Defendant's cross-motion for judgment on the pleadings is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order. The Clerk of Court is directed to enter judgment in favor of Plaintiff and to close the case.

**SO ORDERED**

Dated:     December 21, 2023
           Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

35